**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Benjamin Mercado Valdez,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | CIV 14-1419-PHX-DGC (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

Petitioner Benjamin Mercado Valdez, who is confined in the Arizona State Prison-Kingman, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents have filed an Answer (Doc. 8), and Petitioner has filed a Reply (Docs. 9, 10).

## BACKGROUND[1]

The presentence report provides the following factual background:

> On April 8, 2009, [Petitioner] stole a vehicle belonging to Cookson Door Sales. It was located through a tracking device and found to have been at a storage facility. The stolen vehicle was found stripped of its equipment. Police found the contents taken from the vehicle[,] in addition to multiple other stolen items[,] inside the storage unit rented by [Petitioner].

(Exh. I at 1).

Petitioner was booked into jail, and the State filed an indictment in the Maricopa County Superior Court charging him with seven counts of theft, class 3 felonies. (Exh. A.)

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 8 – Respondents' Answer.

1 The State later amended the indictment and alleged that Petitioner had six prior convictions
2 for burglary and theft. (Exh. B.)

3 On July 17, 2009, the prosecutor extended an initial plea offer to Petitioner, which
4 called for Petitioner to plead guilty to one count of theft, with one historical prior conviction,
5 and receive a 10-year prison sentence. (Exh. C at 3-4; Exh. T at 5-6, 18-19.) However, after
6 negotiations by defense counsel and a policy-deviation request, the prosecutor subsequently
7 presented Petitioner with a proposed plea-agreement that would result in a prison sentence
8 ranging from 7-8 years. (Exh. T at 19-20.)

9 The proposed agreement was communicated to Petitioner a week before a settlement
10 conference that was held on September 18, 2009. (Exh. E at 19-20.) During the conference,
11 the terms from the proposed agreement were explained to Petitioner. (Id. at 5-18.) The court
12 informed Petitioner that he faced a possible 175-year prison sentence if he were convicted
13 on all seven counts in the indictment. (Id. at 6.) Petitioner acknowledged the potential
14 punishment for his offenses, and declared that he intended to plead guilty, but he complained
15 that the proposed sentence of 7-8 years was "a very long sentence." (Id. at 8) Petitioner,
16 consequently, asked the prosecutor to "lower [the sentence] a little bit more." (Id. at 11.) The
17 prosecutor refused Petitioner's request because the proposed agreement already included a
18 special deviation from the State's policies, resulting in a much shorter sentence than he
19 would have otherwise received. (Id. at 10-12.) The court told Petitioner that the proposed
20 agreement was "a better deal than [it] would have anticipated." (Id. at 10.) Nonetheless,
21 Petitioner rejected the proposed agreement and indicated that he preferred to have a trial. (Id.
22 at 18.)

23 Later, before a trial-management conference on September 24, 2009, the State
24 re-extended the proposed agreement to Petitioner, per his request. (Exh. T at 23.) Petitioner
25 then signed the proposed agreement, but he refused "to enter the plea agreement on the
26 record that day." (Id. at 23.) Despite signing the proposed agreement, Petitioner maintained
27 that he wanted a "better plea agreement" and, as a result, refused to enter into it in open
28 court. (Id. at 23-26.) The State, again, declined Petitioner's request for a better offer, but it

- 2 -

1 stated that Petitioner could accept the agreement in court later that day if he changed his 2 mind. (Id. at 14.) Petitioner chose not to accept the proposed agreement. (Id. at 15, 25-26.)

3 Instead, during the trial-management conference, Petitioner told the court that he 4 wanted to hire a different attorney to represent him. (Exh. F at 3-5.) After a discussion off 5 the record, the court asked Petitioner why he wanted a new attorney, and Petitioner 6 responded that he wanted a different legal opinion regarding his case because he did not like 7 the advice that he was receiving. (Id.) The trial court denied Petitioner's request for a new 8 attorney, but it stated that a new attorney could represent him at trial if that attorney would 9 avow to the court that he or she would be prepared for trial the following week. (Id. at 4-5.) 10 Petitioner never mentioned the proposed agreement during the trial-management conference, 11 nor did he contact defense counsel after the conference adjourned to say that he wanted to 12 enter the agreement on the record. (Exh. F; Exh. T at 14, 23-26, 29-30, 34-35.)

13 On October 1, 2009, Petitioner decided that he no longer wanted to go to trial, and 14 instead chose to plead guilty because he "felt that he would get more leniency if he pled to 15 the [c]ourt." (Exh. T at 33.) The court told Petitioner that there was no plea agreement related 16 to his guilty plea, and, as a result, his plea would involve all seven counts that were charged 17 in the indictment. (Exh. G at 4-5.) Petitioner stated that he understood, waived his right to 18 trial, and elected to plead guilty to all seven offenses. (Id. at 4-8; Exh. H.) The State 19 subsequently proved that Petitioner had previously been convicted of six theft-related 20 felonies, and the trial court sentenced him to concurrent, 15-year sentences for all seven 21 convictions. (Exh. J at 32-33, 41-42.)

22 On December 9, 2009, Petitioner timely filed a notice of his "Rule 32 of-right 23 proceedings" with the superior court. (Exh. K.) The superior court appointed counsel, who 24 later avowed that he was unable to find any colorable claims for relief. (Exhs. L & M.) 25 Petitioner subsequently filed a *pro se* petition that alleged his trial counsel was ineffective 26 by failing to have the signed, proposed agreement accepted by the trial court. (Exh. O at 5-6.) 27 Petitioner also requested to have counsel appointed to represent him at an evidentiary hearing 28 on the PCR petition. (Exh. R.) Petitioner's request was granted, and an evidentiary hearing

1  was held on September 13, 2011, when the court heard testimony from the prosecutor,
2  defense attorney, and Petitioner. (Exh. S.)

3         The prosecutor testified that he initially extended Petitioner the 10-year plea offer but,
4  after negotiations with Petitioner's counsel, was convinced to offer Petitioner the proposed
5  agreement that would have resulted in a 7-8 year sentence. (Exh. T at 6, 10.) The prosecutor
6  stated that Petitioner signed the proposed agreement on September 24, 2009, but he refused
7  to enter into the agreement in open court because he did not want to serve 7-8 years. (Id. at
8  11-12.)

9         Defense counsel corroborated the prosecutor's account and testified that Petitioner
10  signed the agreement before the trial-management conference, but Petitioner rejected the
11  proposed agreement immediately after because he hoped to receive "a better plea agreement"
12  from the State. (Id. at 23, 34.) Defense counsel further testified that he explained the
13  proposed agreement to Petitioner and "begged him to take the plea agreement." (Id. at 24,
14  26-29.) But Petitioner refused to accept the proposed agreement and made no attempts to
15  contact counsel before it expired that day. (Id. at 28-33.)

16         Petitioner claimed at the evidentiary hearing that the prosecutor and defense attorney
17  were both lying. (Id. at 46.) According to Petitioner, defense counsel never discussed the
18  proposed agreement and abandoned him after he signed it. (Id. at 37-41.) Petitioner, however,
19  did admit that he never told the trial court that he wanted to accept the proposed agreement
20  on September 18th or September 24th. (Id. at 44-45.) Petitioner also never mentioned any
21  plea agreement during his change-of-plea hearing on October 1, 2009. (Exh. G.) Instead, the
22  record shows that Petitioner knowingly and voluntarily pled guilty to all seven counts,
23  without the benefit of any plea agreement. (Exhs. G & H.)

24         After considering all the evidence, the court determined that Petitioner's testimony
25  at the evidentiary hearing was "incredible based on [its own] observations in court." (Exh.
26  V at 2.) The court further stated that defense counsel's testimony was "more credible and
27  consistent with [Petitioner's] behavior throughout the plea negotiation period." (Id.)
28  Accordingly, the court concluded that the evidence proved "[Petitioner] wasn't going to

1  accept that plea offer. [He] did not like the advice of his counsel and did not like the plea and
2  rejected it." (Id.) Consequently, the court denied Petitioner's PCR petition. (Id.)

3  Petitioner filed a timely petition for review to the Arizona Court of Appeals. (Exh. W.)
4  After reviewing the record, the court of appeals affirmed the superior court's ruling and
5  concluded: (1) "the record contains ample evidence to support the factual findings that are
6  the bases for the [superior court's] determination;" and (2) "the record supports the [superior]
7  court's ruling in its entirety." (Exh. Y at 6.) Petitioner subsequently filed a petition for review
8  with the Arizona Supreme Court, but it was summarily denied. (Id. at 1.)

9  In his Petition, Petitioner raises one ground for relief. Petitioner asserts that his Sixth
10 Amendment rights were violated because his counsel "failed to secure a more favorable
11 plea," "failed to timely communicate the plea to [Petitioner]," and "provided incorrect and
12 erroneous information to his clients [sic] with respect to the merits of the plea."

**DISCUSSION**

14 In their Answer, Respondents contend that Ground One fails on the merits. As such,
15 Respondents request that the Court deny and dismiss Petitioner's habeas petition with
16 prejudice.

17 Pursuant to the AEDPA[2], a federal court "shall not" grant habeas relief with respect
18 to "any claim that was adjudicated on the merits in State court proceedings" unless the state
19 court decision was (1) contrary to, or an unreasonable application of, clearly established
20 federal law as determined by the United States Supreme Court; or (2) based on an
21 unreasonable determination of the facts in light of the evidence presented in the state court
22 proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000)
23 (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard
24 of review). "When applying these standards, the federal court should review the 'last
25 reasoned decision' by a state court ... ." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.
26 2004).

---

[2] Antiterrorism and Effective Death Penalty Act of 1996.

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

In Ground One, Petitioner contends his counsel was ineffective for failing to secure a more favorable plea, failing to timely communicate the plea, and providing incorrect and erroneous information with respect to the merits of the plea.

The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88.

Regarding the performance prong, a reviewing court engages a strong presumption that counsel rendered adequate assistance, and exercised reasonable professional judgment in making decisions. See id. at 690. "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland is "extremely limited": "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel

1  acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other
2  grounds, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's
3  challenged conduct on the facts of the particular case, viewed as of the time of counsel's
4  conduct." Strickland, 466 U.S. at 690.

5  If the prisoner is able to satisfy the performance prong, he must also establish
6  prejudice. See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden
7  is on defendant to show prejudice). To establish prejudice, a prisoner must demonstrate a
8  "reasonable probability that, but for counsel's unprofessional errors, the result of the
9  proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable
10 probability" is "a probability sufficient to undermine confidence in the outcome." Id. A court
11 need not determine whether counsel's performance was deficient before examining whether
12 prejudice resulted from the alleged deficiencies. See Robbins, 528 U.S. at 286 n.14. "If it is
13 easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,
14 which we expect will often be so, that course should be followed." Id. (quoting Strickland,
15 466 U.S. at 697).

16 In reviewing a state court's resolution of an ineffective assistance of counsel claim,
17 the Court considers whether the state court applied Strickland unreasonably:

> For [a petitioner] to succeed [on an ineffective assistance of counsel claim], ... he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner.

22 Bell v. Cone, 535 U.S. 685, 698-99 (2002) (citations omitted); see also Woodford v.
23 Visciotti, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause,
24 a federal habeas court may not issue the writ simply because that court concludes in its
25 independent judgment that the state-court decision applied Strickland incorrectly. Rather, it
26 is the habeas applicant's burden to show that the state court applied Strickland to the facts
27 of his case in an objectively unreasonable manner.") (citations omitted).
28

In his PCR petition, Petitioner argued that his counsel "fail[ed] to have [his] accepted, initialed, signed, and dated plea agreement entered into the record ... and accepted by the court on September 24, 2009." (Exh. O at 4-5.) Following an evidentiary hearing, the superior court denied Petitioner's PCR petition after determining Petitioner's claims were "incredible based on [the superior court's] observations in Court." (Exh. V at 2.) The superior court further concluded that Petitioner's trial counsel "was more credible and consistent with [Petitioner's] behavior throughout the plea negotiation period, that he wasn't going to accept the plea. [Petitioner] did not like the advice of his counsel and did not like the plea and rejected the plea offer." (Id.)

In his petition for review to the Arizona Court of Appeals, Petitioner reasserted that his counsel provided ineffective assistance by abandoning him after he signed the proposed agreement. (Exh. W at 7-8.) Petitioner again claimed that his counsel failed to have the proposed agreement accepted by the trial court. (Id.) The court of appeals, however, affirmed the superior court's ruling after explicitly finding:

> Valdez had been offered the [proposed agreement], that counsel communicated the offer to him and explained the deadline for accepting it, but Valdez rejected it on two occasions, the first at the settlement conference on September 18, 2009, and then at the trial management conference when the [proposed agreement] was made again, just for that day. The court found defense counsel was not ineffective.
>
> The trial court's findings were based primarily on its assessment of the credibility of the witnesses who testified at the hearing: prosecutor Christopher Rapp, defense counsel Xavier Sedillo, and Valdez. The court found Rapp and Sedillo credible, stating it did not believe that "after working so hard for weeks to convince the defendant to take the plea, [Sedillo had] just abandoned him in court after singing the plea." But the court found Valdez's testimony "incredible," based on the court's own "observations in Court." The court concluded: "Mr. Sedillo's testimony was more credible and consistent with defendant's behavior throughout the plea negotiation period, that he wasn't going to accept that plea. Defendant did not like the advice of his counsel and did not like the plea and rejected the plea offer."
>
> . . .
>
> [T]he record contains ample evidence to support the factual findings that are the bases for the trial court's determination that Valdez failed to establish he received ineffective assistance of counsel. Valdez essentially asks us to reweigh the evidence, which we will not do. *See State v. Rodriguez*, 205 Ariz. 392, ¶ 18, 71 P.3d 919, 924 (App. 2003). Rather, because the record supports the court's ruling in its entirety, the salient portions of which we have

> summarized or quoted in this decision, we adopt it here. *See State v. Whipple*, 177 Ariz. 272, 274, 866 P.2d 1358, 1360 (App. 1993).

(Exh. Y at 4-6.)

The Court fails to find deficient performance. As the record demonstrates, Petitioner was initially presented with a plea offer that called for him to serve a 10-year sentence, but, after negotiations, defense counsel secured a proposed agreement that would have allowed Petitioner to receive a 7-8 year sentence – which was far below the 175-year sentence that Petitioner could have received if he was found guilty. (Exh. C at 3-4; Exh. E at 6; Exh. T at 5-6, 18-20.) The trial court even stated that the agreement was "a better deal than [it] would have anticipated." (Exh. E at 10.)

Nonetheless, Petitioner contends that defense counsel was constitutionally ineffective for failing to discuss the proposed agreement with him and have it entered into the record in open court. The record, however, reveals that defense counsel did explain the terms to Petitioner, and it was Petitioner – not defense counsel – who refused to have the proposed agreement entered into the record. (Exh. T at 23-33.) Accordingly, the court of appeals found that Petitioner's uncorroborated IAC claim was "incredible" and directly refuted by both the prosecutor and defense attorney. (Exh. Y at 6.) Petitioner fails to present any evidence to rebut the court of appeal's findings. Petitioner, therefore, has failed to carry his burden and show his counsel's performance was deficient.

Petitioner has also failed to show prejudice. Petitioner repeatedly refused to enter into the proposed agreement on the record. (Exh. T at 23-25.) Counsel went over the agreement with Petitioner, even "begging him to accept the plea agreement," but Petitioner rejected the proposed agreement on multiple occasions because he hoped for an even more favorable plea offer. (Id. at 23-33.) Petitioner's unsupported and self-serving declaration stating that he wanted to have the proposed agreement accepted by the trial court on the record is directly contradicted, and his bare claims are insufficient to establish prejudice in light of the contradictory evidence. See Berkey v. United States, 318 F.3d 768, 773 (7th Cir. 2003) ("[A] self-serving statement is not enough to satisfy the second Strickland prong."); Miller v. Champion, 262 F.3d 1066, 1072

- 9 -

1  (10th Cir. 2001) ("[A] petitioner's 'mere allegation' that he would have insisted on trial but for his
2  counsel's errors, although necessary, is ultimately insufficient to entitle him to relief."); see also
3  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by
4  a statement of specific facts do not warrant habeas relief.").

5  Accordingly, Petitioner fails to demonstrate that the state courts violated Strickland
6  or applied Strickland to the facts of his case in an objectively unreasonable manner. Thus,
7  the Court finds that the state court's decision was not contrary to clearly established federal
8  law.

## CONCLUSION

10  Having determined that Ground One fails on the merits, the Court will recommend
11  that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

12  **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of
13  Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH**
14  **PREJUDICE**.

15  **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave
16  to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a
17  substantial showing of the denial of a constitutional right.

18  This recommendation is not an order that is immediately appealable to the Ninth
19  Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
20  Appellate Procedure, should not be filed until entry of the district court's judgment. The
21  parties shall have fourteen days from the date of service of a copy of this recommendation
22  within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1);
23  Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Pursuant to Rule 7.2, Local Rules of
24  Civil Procedure for the United States District Court for the District of Arizona, objections
25  to the Report and Recommendation may not exceed seventeen (17) pages in length.

26  \\\
27  \\\
28  \\\

1   Thereafter, the parties have fourteen days within which to file a response to the
2 objections. Failure timely to file objections to the Magistrate Judge's Report and
3 Recommendation may result in the acceptance of the Report and Recommendation by the
4 district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121
5 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the
6 Magistrate Judge will be considered a waiver of a party's right to appellate review of the
7 findings of fact in an order or judgment entered pursuant to the Magistrate Judge's
8 recommendation. See Rule 72, Federal Rules of Civil Procedure.

9   DATED this 6th day of May, 2015.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge

- 11 -